# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT GARCIA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>N. RIAZ,<br><br>　　　　Defendant. | No. 2:15-CV-1869-JAM-DMC-P<br><br>FINDINGS AND RECOMMENDATIONS |

　　　　Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the court is defendant's motion for summary judgment (Doc. 25). Plaintiff claims defendant was deliberately indifferent to his serious medical needs by discontinuing narcotic pain medication without regard to plaintiff's condition. Defendant argues the undisputed evidence shows narcotic pain medication was not medically warranted and, for this reason, he is entitled to judgment as a matter of law because plaintiff's claim amounts to no more than a difference of medical opinion. Defendant also argues he is entitled to qualified immunity. For the reasons discussed below, the court agrees defendant is entitled to summary judgment.

/ / /

/ / /

/ / /

1

## I. PLAINTIFF'S ALLEGATIONS

This action proceeds on plaintiff's original verified complaint (Doc. 1). Plaintiff names the following as defendants: (1) N. Riaz; and (2) D. Bodenhamer.[1] Plaintiff states that he was injured by prison staff while housed at Corcoran State Prison. See Doc. 1, pg. 4. Plaintiff further states that he "won a successful settlement" in Garcia v. Masiel, et al., E.D. Cal. case no. 1:07-CV-1750-AWI- SMS, "wherein plaintiff alleged excessive force causing injury." See id. Plaintiff alleges:

> Although not specifically written, yet certainly implied, plaintiff was led to believe the medical treatments and pain medication that would be needed would be forever provided as long as he remained in the custody of the CDCR, and for that reason did not believe at the time of settlement that he needed to include those terms in the written instrument of the agreement.
>
> Id.

Plaintiff adds:

> Plaintiff has personally witnessed CDCR's use of sweeping, arbitrary unconstitutional blanket instructions where a [sic] institution will send Dr.'s throughout an institution with instructions to take any and all pain medications for inmates receiving chronic pain management. No real method or justification is used, and it is because of one of these "sweeps" that plaintiff became victim of that this claim arises.
>
> Id.

Plaintiff's claims against defendant are extremely limited. Plaintiff claims that, on August 25, 2015, defendant Riaz, a prison doctor, "took plaintiff's pain management medications without any regard to the extensive historical record of need. . . ." Id.

///
///
///
///
///

---

[1] Defendant Bodenhamer was dismissed on Aril 12, 2018. See Doc. 22 (April 12, 2018, District Judge order).

2

## II. THE PARTIES' EVIDENCE

A. **Evidence Submitted by Defendant**

Defendant contends the following facts are not in dispute:

1. Methadone is a narcotic opioid.

2. The use of methadone is neither effective nor safe in the long-term treatment of chronic pain.

3. Long-term use of methadone can lead to addiction.

4. Long-term use of methadone can cause liver damage, and is of particular concern in patients who already have a chronic liver disease such as Hepatitis C.

5. Non-opioid medication is recommended for treatment of chronic pain.

6. Defendant saw plaintiff on August 25, 2014, for routine follow-up regarding plaintiff's chronic left shoulder pain.

7. At this appointment, defendant noted plaintiff had a history of chronic left shoulder pain, had five shoulder surgeries, and had been prescribed methadone for pain for the past seven years.

8. Defendant also noted plaintiff has a history of Hepatitis C.

9. The results of defendant's August 25, 2014, examination were unremarkable, and defendant did not observe plaintiff to be in any discomfort or pain during the examination.

10. Based on plaintiff's examination as well as his history of chronic pain and Hepatitis C, defendant concluded plaintiff did not need narcotic medication.

11. Defendant ordered plaintiff be tapered off methadone over a three-week period and that plaintiff take Tylenol Extra Strength beginning September 15, 2014.

12. Defendant saw plaintiff for another follow-up on September 8, 2014, at which time plaintiff continued to complain of shoulder pain.

13. At the time, plaintiff was on a tapering dose of methadone.

14. Based on his examination on September 8, 2014, defendant did not find any indication for continued long-term use of methadone for plaintiff's chronic pain.

15. Defendant saw plaintiff again on September 12, 2014, in response to plaintiff's complaints of back pain.

3

16. At the September 12, 2014, appointment, defendant reviewed nursing staff notes from the prior day indicating plaintiff was exhibiting medication-seeking behavior.

17. Based on his examination on September 12, 2014, defendant did not find any indication for continued long-term use of methadone for plaintiff's chronic pain.

18. Defendant saw plaintiff again on September 30, 2018, at which time plaintiff had been off methadone and was taking Tylenol.

19. Based on his examination on September 30, 2014, defendant did not find any indication for continued long-term use of methadone for plaintiff's chronic pain.

20. At the September 12, 2014, visit, defendant offered to add an NSAID medication for plaintiff's pain, but plaintiff declined.

21. On October 15, 2014, the Pain Management Committee recommended against placing plaintiff back on methadone and determined his pain symptoms could effectively be treated with non-narcotic medications.

See Doc. 25-3 (defendant's statement of undisputed facts).

Defendant's statement of undisputed facts is supported by the transcript of plaintiff's deposition, see Doc. 25-4, Exhibit A, the declaration of E. Myers, the custodian of records authenticating plaintiff's medical records and records attached thereto, see Doc. 25-5, Exhibits A and B, and the declaration of defendant and records attached thereto, see Doc. 25-6, Exhibits A-H.

**B.**    **Evidence Submitted by Plaintiff**

In his opposition, plaintiff states he does "not dispute most of Riaz's facts, as they are based upon his own declaration, which admits he is not a specialist or expert in any area of medicine that would grant his claim to know better than the years of experts and surgeons who found plaintiff's needs were properly met with the Methadone he was receiving. . . ." Doc. 27, pg. 2. Instead, plaintiff submitted as Exhibits A1 and A1 documents he says "disproves Riaz's assertions that studies are not effective or safe for long term use." Id.

/ / /

/ / /

/ / /

Exhibit A1 consists of a March 15, 2016, "Morbidity and Mortality Weekly Report" published by the Centers for Disease Control and Prevention. The document sets guidelines for prescribing opioids for treatment of chronic pain. The report's conclusions are based on the following assessments:

> 1. No evidence shows a long-term benefit of opioids in pain and function versus no opioids for chronic pain.
>
> 2. Extensive evidence shows the possible harms of opioids.
>
> 3. Extensive evidence suggests some benefits of non-opioid pharmacologic treatments compared with long-term opioid therapy.

See Doc. 27, Exhibit A1.

Exhibit A2 appears to be a February 9, 2011, article regarding the use of Methadone. The article reports the authors opinion that Methadone use has no harmful effects to the liver of kidneys. See id. at Exhibit A2.

### III. STANDARDS FOR SUMMARY JUDGMENT

The Federal Rules of Civil Procedure provide for summary judgment or summary adjudication when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The standard for summary judgment and summary adjudication is the same. See Fed. R. Civ. P. 56(a), 56(c); see also Mora v. ChemTronics, 16 F. Supp. 2d. 1192, 1200 (S.D. Cal. 1998). One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Under summary judgment practice, the moving party

> . . . always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Id., at 323 (quoting former Fed. R. Civ. P. 56(c)); see also Fed. R. Civ. P. 56(c)(1).

/ / /

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c)(1); see also Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987). To demonstrate that an issue is genuine, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted). It is sufficient that "the claimed factual dispute be shown to require a trier of fact to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631.

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. See Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed, see Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, see Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Ultimately, "[b]efore the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could

properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 251.

**IV. DISCUSSION**

In his motion for summary judgment, defendant argues the undisputed evidence shows he was not deliberately indifferent to plaintiff's shoulder pain and, for this reason, he is entitled to judgment as a matter of law. Defendant also argues he is entitled to qualified immunity. As discussed below, the court agrees.

### A. **Deliberate Indifference**

The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment. See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994). The Eighth Amendment ". . . embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102 (1976). Conditions of confinement may, however, be harsh and restrictive. See Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Nonetheless, prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986). A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm. See Farmer, 511 U.S. at 834. Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable mind." See id.

Deliberate indifference to a prisoner's serious illness or injury, or risks of serious injury or illness, gives rise to a claim under the Eighth Amendment. See Estelle, 429 U.S. at 105; see also Farmer, 511 U.S. at 837. This applies to physical as well as dental and mental health needs. See Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982). An injury or illness is sufficiently serious if the failure to treat a prisoner's condition could result in further significant

injury or the ". . . unnecessary and wanton infliction of pain." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992); see also Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994). Factors indicating seriousness are: (1) whether a reasonable doctor would think that the condition is worthy of comment; (2) whether the condition significantly impacts the prisoner's daily activities; and (3) whether the condition is chronic and accompanied by substantial pain. See Lopez v. Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000) (en banc).

The requirement of deliberate indifference is less stringent in medical needs cases than in other Eighth Amendment contexts because the responsibility to provide inmates with medical care does not generally conflict with competing penological concerns. See McGuckin, 974 F.2d at 1060. Thus, deference need not be given to the judgment of prison officials as to decisions concerning medical needs. See Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989). The complete denial of medical attention may constitute deliberate indifference. See Toussaint v. McCarthy, 801 F.2d 1080, 1111 (9th Cir. 1986). Delay in providing medical treatment, or interference with medical treatment, may also constitute deliberate indifference. See Lopez, 203 F.3d at 1131. Where delay is alleged, however, the prisoner must also demonstrate that the delay led to further injury. See McGuckin, 974 F.2d at 1060.

Negligence in diagnosing or treating a medical condition does not, however, give rise to a claim under the Eighth Amendment. See Estelle, 429 U.S. at 106. Moreover, a difference of opinion between the prisoner and medical providers concerning the appropriate course of treatment does not give rise to an Eighth Amendment claim. See Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

Plaintiff claims defendant "took plaintiff's pain management medications without any regard to the extensive historical record of need. . . ." Doc. 1, pg. 4. The undisputed evidence provided by defendant shows otherwise. Initially, the undisputed evidence shows defendant did not discontinue all pain medications, as plaintiff's claim suggests. Rather, defendant discontinued opioid pain medications and prescribed non-opioid medications in their place, specifically Tylenol. Plaintiff does not challenge any of defendant's evidence in this regard.

8

The undisputed evidence also establishes defendant's decision to discontinue opioid pain medication and to instead prescribe a non-opioid medication was based on defendant's examinations of plaintiff, plaintiff's long history of use of opioid medications for chronic pain, plaintiff's history of Hepatitis C, evidence plaintiff engaged in medication-seeking behavior, the risks of dependence associated with long-term opioid use, and the availability of non-narcotic alternative medications for plaintiff's pain. Plaintiff's Exhibit A1 is consistent with defendant's conclusion. While plaintiff's Exhibit A1 suggests a medical opinion contrary to the opinion reached by defendant in this case with respect to the effects of methadone use on the kidneys and liver, at best plaintiff's exhibit establishes a difference of medical opinion. Because a difference of medical opinion is not actionable under § 1983, see Jackson, 90 F.3d at 332, Exhibit A1 does not suggest a dispute as to any material fact.

### B. Qualified Immunity

Government officials enjoy qualified immunity from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In general, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). In ruling upon the issue of qualified immunity, the initial inquiry is whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the defendant's conduct violated a constitutional right. See Saucier v. Katz, 533 U.S. 194, 201 (2001). If a violation can be made out, the next step is to ask whether the right was clearly established. See id. This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition. . . ." Id. "[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. at 202 (citation omitted). Thus, the final step in the analysis is to determine whether a reasonable officer in similar circumstances would have thought his conduct violated the alleged right. See id. at 205.

///

When identifying the right allegedly violated, the court must define the right more narrowly than the constitutional provision guaranteeing the right, but more broadly than the factual circumstances surrounding the alleged violation. See Kelly v. Borg, 60 F.3d 664, 667 (9th Cir. 1995). For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand [that] what [the official] is doing violates the right." See Anderson v. Creighton, 483 U.S. 635, 640 (1987). Ordinarily, once the court concludes that a right was clearly established, an officer is not entitled to qualified immunity because a reasonably competent public official is charged with knowing the law governing his conduct. See Harlow v. Fitzgerald, 457 U.S. 800, 818-19 (1982). However, even if the plaintiff has alleged a violation of a clearly established right, the government official is entitled to qualified immunity if he could have ". . . reasonably but mistakenly believed that his . . . conduct did not violate the right." Jackson v. City of Bremerton, 268 F.3d 646, 651 (9th Cir. 2001); see also Saucier, 533 U.S. at 205.

The first factors in the qualified immunity analysis involve purely legal questions. See Trevino v. Gates, 99 F.3d 911, 917 (9th Cir. 1996). The third inquiry involves a legal determination based on a prior factual finding as to the reasonableness of the government official's conduct. See Neely v. Feinstein, 50 F.3d 1502, 1509 (9th Cir. 1995). The district court has discretion to determine which of the Saucier factors to analyze first. See Pearson v. Callahan, 555 U.S. 223, 236 (2009). In resolving these issues, the court must view the evidence in the light most favorable to plaintiff and resolve all material factual disputes in favor of plaintiff. Martinez v. Stanford, 323 F.3d 1178, 1184 (9th Cir. 2003).

The facts alleged in the complaint, when viewed in the light most favorable to plaintiff, establish an Eighth Amendment violation. The undisputed evidence, however, establishes that no violation occurred. Thus, defendant is entitled to qualified immunity because he not only reasonably, but accurately, concluded his conduct did not violate the law.

///

///

///

## V.  CONCLUSION

Based on the foregoing, the undersigned recommends that defendant's motion for summary judgment (Doc. 25) be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the court.  Responses to objections shall be filed within 14 days after service of objections.  Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  January 31, 2019

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE